IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY NETTLES, individually and on behalf of similarly situated persons, | ) ) ) | Case No. 18-cv-7766 |
| Plaintiff, | ) ) ) | Hon. Edmond E. Chang |
| v. | ) ) | |
| BLATT, HASENMILLER, LEIBSKER & MOORE LLC, MIDLAND FUNDING LLC, and MIDLAND CREDIT MANAGEMENT, INC., | ) ) ) ) ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS MIDLAND FUNDING LLC'S AND MIDLAND CREDIT
MANAGEMENT, INC'S MOTION TO COMPEL ARBITRATION**

**INTORDUCTION**

Plaintiff's claims under the Fair Debt Collection Practices Act, arise from the attempt to collect a larger amount of money owned on a Consent Judgment, or put another way, failing to properly credit Plaintiff for the payments made towards satisfying the Consent Judgment. The Consent Judgment in this case, is a contract that was negotiated at arm's length by counsel for Ms. Nettles and counsel for Midland Funding LLC, agreed to by Ms. Nettles, on one hand, and Midland Funding LLC, on the other. Credit One Bank, N.A., is not a party to the Consent Judgment contract, nor is a third-party beneficiary of the terms and conditions set forth in the Consent Judgment, having sold the debt to one company, who sold it to another, who then sold it to Midland Funding who then sued Plaintiff upon it in Michigan. The Consent Judgment, entered by the state court judge, is the only contract for this Court to examine in determining whether Defendants can compel arbitration. Defendants do not assert that the Consent Judgment contains an arbitration provision. Indeed, the Consent Judgment does not provide an arbitration clause.

Alternatively, Defendants should be judicially estopped from claiming any rights under a contract, as when suing Plaintiff in a state court in, Midland Funding purposefully elected to proceed only on an account stated claim, choosing to ease its evidentiary burden in proceeding before the state court using an affidavit, *see* Michigan, MCL 600.2145, in order to bypass Michigan Court Rule 2.113(C)(1)'s attachment of the contract *mandatory* requirement. MCR 2.113(C)(1).[1] Midland should not be permitted to disavow the existence of the Credit One Bank contract in state court, only to seek to compel arbitration in federal court under that same disavowed contract.

However, before this Court can rule on whether to deny Defendants' motion to compel arbitration, the Court must first determine whether Plaintiff's allegations satisfied Article III's standing requirements, especially in light of Defendants assertion in their affirmative defenses that, "Plaintiff lacks standing to maintain her claims, and thus, Plaintiff's claims should be dismissed for lack of jurisdiction." (Defs. Answ., Doc #:14, PageID #:49 ¶ 10). Plaintiff has standing.

Wherefore the reasons stated herein, Defendants' motion to compel arbitration should be denied.

## FACTS

On or around March 2017, Defendant Blatt, Hansenmiller, Leibsker & Moore LLC, ("BHL&M"), on behalf of Midland Funding, filed a lawsuit against Plaintiff in the 17th District Court, State of Michigan, against Ms. Nettles. (Exhibit A). The state court complaint was not based upon any contract, nor was any contract attached to the complaint. In the complaint, Midland Funding alleged that it, "was the holder of a credit card or other consumer finance account, 'the Account,' with CREDIT ONE BANK, N.A. having original account number XXXXXXXXXXXX0849." (Id).

---

[1] Formerly at MCR 2.113(F)(1).

Attached to the Complaint as Exhibit 1, was the Affidavit of Sheri Meline, "an officer for MIDLAND FUNDING, LLC [who has] access to pertinent account records for Midland Credit Management, Inc., ("MCM"), servicer of this account", ending with the last four digits, "0849". (Id., Ex. 1 ¶¶ 1, 2). Ms. Meline further affirmed that she has, "access to and have reviewed the Pertinent Records (including pertinent electronic records) concerning the account maintained by MCM. The electronic records reviewed consist of data acquired from the seller when Plaintiff purchased the account, together with records generated by MCM in connection with servicing the account since the day the account was purchased by [Midland Funding, LLC]." (Id. ¶ 5). Ms. Meline stated, "[t]he acquired and incorporated records are treated as trustworthy and accurate, and are relied upon by Plaintiff and MCM in purchasing and servicing this account because the original creditor was required to keep careful records of the account at issue in this case as required by law and/or suffer business loss." Ms. Meline concludes her affidavit stating, in part, "As of 2017-02-28, MCM's records show that the balance of $601.67 remains due and owing and no interest has been assessed to the account." (Id. ¶ 7). Notably, Ms. Meline's Affidavit is titled:

**State of MICHIGAN**

| | |
|---|---|
| MIDLAND FUNDING LLC, | |
| Plaintiff | |
| -vs- | **AFFIDAVIT OF SHERI MELINE** |
| Ashley Nettles, | |
| Defendant(s). | |

(Exhibit A, Ex. 1).

The state court complaint sought an "amount of $601.97 plus costs", the statement of account attached to the complaint, the "CREDIT ONE BANK CARD STATEMENT" ending July 16, 2016, showed a "New Balance" of "$601.97". (Exhibit A).

Ms. Nettles retained legal counsel in relation to the state court lawsuit, Mr. Evanchek, an attorney at Kelley & Evanchek, in Canton, Michigan, who then engaged in arms lengths negotiations with Ms. Nonis, an attorney at BHL&M, to settle the claim brought against Ms. Nettles. *See* (Exhibit B). In the email exchanges between counsel, on June 28, 2017, Ms. Nonis asked, in part, "[p]lease advise . . . whether she is willing to resolve this matter", to which Mr. Evanchek responded, "I can offer $50/mo until PDIF, no interest on the judgment." (Id.). Ms. Nonis, on behalf of Midland Funding, accepted the offer stating, "[t]hat would be fine, it would have to be a consent judgment. We do not charge interest or any other fees post judgment. See attached. Once singed and scanned back I will submit to the court." (Id.). Mr. Evanchek, on Ms. Nettles behalf, signed the Consent Judgment, allowing judgment to be entered against Ms. Nettles, which provided the following "Other conditions":

> Defendant shall pay $50.00 per month beginning 08/01/2017 until paid in full. Should Defendant fail to comply with this agreement in any manner, Plaintiff may file an Affidavit of Non-Compliance and commence all legal collection activity on the remaining balance.

(Id.)

Ms. Nonis, on behalf of Midland Funding, signed the Consent Judgment agreeing to all the terms contained therein. (Exhibit C). The state court later signed the Consent Judgment, and judgment was entered for Midland Funding in the total amount of $689.37, comprised of "Damages" of "$601.97" and "Costs(fees)" of "87.40" (Id.). Notably, no interest is permitted by either the agreement brokered by counsel for the parties, or the Consent Judgment itself. (Exhibit B); (Exhibit C) ("ORDER OF JUDGMENT NOT INCLUDING STATUTORY INTEREST").

In compliance with the Consent Judgment, Plaintiff electronically paid from her bank account $50 per month for the months of August, September, and October, 2017, until BHL&M unilaterally stopped accepting Plaintiff's payments. (Doc 1, Complaint, ¶¶ 26-28, 30). BHL&M

4

"permanently closed . . . on December 15, 2017." (Exhibit D). As of October 3, 2017, Plaintiff only owned $539.37 on the Consent Judgment. (Id. ¶ 29).

Midland Credit Management sent, and Plaintiff received a letter dated June 4, 2018, indicating, in part, "Current Balance:     $643.59" (Exhibit E). The letter identifies the same original creditor, as in the lawsuit, Credit One Bank, N.A., and the same last four digits of the account number, 0849, as the account number in the state court lawsuit. *Compare* (Exhibit A) *with* (Exhibit E).

## ARGUMENT

As a preliminary matter, *Henry Schein, Inc. v. Archer & White Sales, Inc.,* __ U.S. __, 139 S. Ct. 524, 202 L E.D. 480 (2019), cited by Defendants, (Defs. Mtn, p. 2), is not applicable to this case, as the purported agreement Defendants are proceeding under, section, **Claims Not Covered**, expressly provides that, "disputes about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof are not subject to arbitration and are for a court to decide." ((Doc. 19-1, PageID #:98).

### I. THE COURT MUST FIRST DETERMINE WHETHER PLAINTIFF'S ALLEGATIONS SATISFY ARTICLE III'S STANDING REQUIREMENTS, BEFORE RULING ON THE MOTION TO COMPEL ARBITRATION

Defendants have asserted in their affirmative defenses that, "Plaintiff lacks standing to maintain her claims, and thus, Plaintiff's claims should be dismissed for lack of jurisdiction", (Defs. Answ., Doc #:14, PageID #:49 ¶ 10), but seemingly concede that Plaintiff has satisfied Article III's standing requirements by requesting this Court to compel arbitration. A court must first determine whether they have proper jurisdiction over the matter before ruling upon a motion to compel arbitration. *E.g. Willams v. TCF Nat'l Bank,* 2013 U.S. Dist. LEXIS 28074 * 1-2 n. 1 (N.D. Ill. Feb. 26, 2013) (Chang, J.).

5

After *Spokeo v. Robins,* 136 S. Ct. 1540, 1549, 194 L. Ed. 2d (2016)*,* federal courts are inconsistent in their rulings over what exactly satisfies Article III' standing requirements. Plaintiff asserts that Justice Thomas' concurrence in *Spokeo* is the correct analysis. *Spoeko*, 136 S. Ct. at 1553-1554 (Thomas, J.) (*concurring*) ("If Congress has created a private duty owed personally to Robins to protect his information, then the violation of the legal duty suffices for Article III injury in fact."). In the Sixth Circuit, *Macy v. GC Servs. L.P.,* 897 F.3d 747 (6th Cir. 2018), which addressed the issue of standing in the Fair Debt Collection Practices Act context, is on point. *see also Lane v. Bayview Loan Servicing*, LLC, 2016 U.S. Dist. LEXIS 89258 *7-8 , 2016 WL 3671467 (N.D. Ill. July 11, 2016) (Chang, J):

> To be sure, if a plaintiff suffers actual monetary damages, then almost surely the Article III concrete-harm requirement is satisfied. But even though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition. Put another way, even absent actual monetary damages, it is still possible to satisfy the concrete-harm requirement[.]

Here Plaintiff's allegation is monetary in nature, that the Midland Defendants were attempting to collect more money that what Ms. Nettles owed on the amount of the Consent Judgment at the time of the subject letter. Put another way, the Midland Defendants were not crediting Plaintiff the full amount of monies she paid towards the Consent Judgment and sought to collect amounts not owed. Plaintiff's claims are similar to a common law abuse of process claim.

The law is clear that seeking an amount of money not owed violates 15 U.S.C. § 1692f, f(1). *See Long v. Shorebank Dev. Corp*., 182 F.3d 548 (7th Cir. 1999) (seeking an amount of money not owed violates the FDCPA); *see Taylor v. Midland Credit Mgmt., Inc.,* 2008 U.S. Dist. LEXIS 14328 * 12 (W.D. Mich. Feb. 26, 2008) (*citing Beattie v. D.M. Collections, Inc*., 754 F. Supp. 383, 392 (D. Del. 1991)) ("by its terms § 1692f(1) addresses the abusive practice of collecting an amount greater than that which is owing[.]"). Therefore, Plaintiff's claims under

FDCPA § 1692f, f(1), are exactly a Congressional private duty owed personally to Ms. Nettles and the Midland Defendants' violation of that legal duty suffices for an Article III injury in fact. Therefore, as Plaintiff has satisfied Article III's standing requirements, this Court has jurisdiction to rule on Defendants' motion to compel arbitration.

**II. THE CONTRACT AT ISSUE IS THE CONSENT JUDGMENT, WHICH DOES NOT CONTAIN AN ARBITRATION PROVISION**

The subject collection letter seeking to collect $643.59, (Exhibit D), is an attempt to collect the Consent Judgment of $689.37, and *not* the "New Balance" of "$601.97" referred to in the "CREDIT ONE BANK CARD STATEMENT" ending July 16, 2016, as sought-after state court complaint. *See* (Exhibit A); *see also* (Defs. Mtn., p. 3) (*citing* Weis Decl. ¶ 10, Ex. D) ("The Nettles Account was charged off on July 17, 2016. [] The balance of the Nettles Account at the time of the charge off was $601.97"); *see also McDonald v. Asset Acceptance, LLC,* 296 F.R.D. 513, 524-26 (E.D. Mich. 2013) *vacated by agreement of the parties*, 2016 U.S. Dist. LEXIS 102182 (E.D. Mich. June 23, 2016) (interest due to the original creditor can be waived by not submitting bills to the debtor after charge-off). Therefore, the contract at issue to which Defendants' collection actions seeking to collect $643.49, was based upon was the Consent Judgment entered in the amount of $689.37, *not* the Credit One Bank card account that had a balance of $601.97. Because of the judgment, Midland Funding's claim for monies in excess of the judgment (minus setoff for the $150 in payments) is also barred by *res judicata*. *See Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2012).

In consideration of monthly payments of $50 and no post-judgment interest being assessed against her, Ms. Nettles waived all of her defenses in the case and entered into a contract with Midland Funding, the Consent Judgment. The Consent Judgment is a contract that was negotiated at arm's length by counsel for Ms. Nettles and counsel for Midland Funding LLC, agreed to by Ms. Nettles, on one hand, and Midland Funding LLC, on the other. The Consent Judgment, entered

7

by the state court judge, is the only contract for this Court to examine in determining whether Defendants can compel arbitration. *See Acorn Investment Co. v. Mich. Basic Prop. Ins. Ass'n*, 495 Mich. 338, 354 (Mich. 2014) ("a consent judgment is a settlement or a contract that becomes a court judgment when the judge sanctions it"). The Consent Judgment entered into in Michigan and entered by a Michigan state court judge is subject to Michigan law. *See Jones v. State Farm Mut. Auto Ins. Co.*, 202 Mich. App 393, 398 (Mich. App. 1993), *mod on other grounds by Patterson v. Kleiman*, 447 Mich. 429, 433 n 3 (Mich. 1994). (subject to an exception that is not applicable here, "interpretation of contract provisions is governed by the law of the state in which the contract was entered").

In, *In re FDCPA Cognate Cases,* mentioned by Plaintiff's counsel in open Court, the Chief Judge of the Western District of Michigan in denying the defendants' motions to compel arbitration, where the allegations, like here, involved *post-judgment* collections misconduct in the State of Michigan, held:

> But even if the Court assumes, for purposes of argument, that arbitration clauses like those included in exemplar copies were actually in effect for Plaintiffs, the Court is still not satisfied that the FDCPA claim at issue here is covered by such an arbitration clause. Yes, the language in the exemplars is broad, and yes, it does cover non-signatory third-parties such as Defendants. But it is still limited in one critical respect: namely, it covers only the claims 'arising from or relating to [the cardmember agreement], or the relationships which result from [the cardmember agreement].' But Plaintiffs' claim in these cases is no longer about the original cardmember agreement in any respect; rather, the claim is that Defendants reduced any claims they acquired under the cardmember agreement to a state court judgment, and that Defendants then violated the FDCPA in pursuit of collection efforts on the judgment, not the original account itself. The entry of a judgment is significant because it merges into itself under Michigan law all the claims, defenses and counterclaims that the parties had arising out of the original cardmember agreements. *See Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2012) (res judicata 'bars not only claims already litigated, but also every claim arising from the same transaction that the parties . . . could have raised but did not'). Once judgment enters, the terms of any cardmember agreement are beside the point; what controls the rights and duties of the parties post-judgment are the law and rules applicable to the judgment itself.

*Hunter v. Mary Jane Elliott, PC,* 2014 U.S. Dist. LEXIS 89159 *8 - 9, 2014 WL 2933230 (W.D. Mich. June 30, 2014) (Yonker, C.J.), *sub. nom. In re FDCPA Cognate Cases*.

8

Defendants' motion concedes, that the Bank One Credit agreement they are proceeding under, has a similar clause as *In re FDCPA Cognate Cases,* in which Midland emphasizes the provision as follows: "[c]laims subject to arbitration include, but are not limited to, disputes relating to . . . **collections matters relating to your Account.**" (Defs. Mtn. p. 12) (*citing* Weise Decl. at Ex. C at Change in Terms (p.6) (emphasis by Defendants original).

Defendants' motion however fails to identify, what the term "Account" means, under the Credit One Bank Agreement. The document attached as Exhibit C to the Weise Declaration, defines what the term "Account" refers to, as follows:

> This Agreement, together with the application you previously singed and the enclosed Arbitration Agreement, governs the use of your VISA® or Mastercard® Account issued byCredit One Bank, N.A. (the 'Account,' 'Card' or 'Card Account').

(Doc. 19-1, PageID #:92); *see also* (Doc. 19-1, PageID #:98), The CHANGES IN TERMS, effective January 2016, which in part provides:

> Credit One Bank, N.A. (the 'Bank') is making important cases to the VISA/MasterCard Cardholder Agreement. Disclosure and Arbitration Agreement (the 'Agreement') that governs your credit card account (the 'Account') with the Bank.

The entire "***Claims Covered***" section of the Credit One Bank Agreement's Change in Terms regarding Arbitration, are expressly limited to the "Account", as follows:

> Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or on or termination of ***your Account***; any disclosures or other documents or communications relating to ***your Account***; any transactions or attempted transactions involving ***your Account*** whether authorized or not; billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collection matters relating to ***your Account***[;] services or benefits programs relating to ***your Account***, whether or not they are offered, introduced, sold or provided by us; advertisements, promotions, or oral or written statements related to (or preceding the opening of) ***your Account***, goods or services financed under ***your Account***, or the terms of financing; the application, enforceability or interpretation of the Card Agreement (except for this Arbitration Agreement); and any other matters relating to ***your account, a prior related Account*** or the resulting relationships between you and us. Any questions about whet Claims are subject to arbitration shall be resolved by interpreting this Arbitration Agreement in the broadest way the law will allow it to be enforced.

> (*Id.*) (emphasis added).

9

The Consent Judgment, the contract for which Defendants' collection activity was based upon, is *not* the "Account" defined in the Bank One Credit Agreement. Defendants' collection attempt was in regard to the Consent Judgment, a separate and distinct contract between Midland Funding and Plaintiff, supported by separate and distinct consideration, without regard to Bank One. Furthermore, Plaintiff is not asserting any right or a dispute under the cardholder Agreement.

Defendants do not assert that the Consent Judgment contains an arbitration provision. "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Therefore, Defendants' motion to compel arbitration must be denied.

### III. ALTERNATIVELY, DEFENDANTS SHOULD BE JUDICIALLY ESTOPPED FROM COMPELLING ARBITRATION

Midland Funding sued Plaintiff on an "Account" stated theory, and Ms. Meline's affidavit does not mention the existence of any contract between Ms. Nettles and the original creditor, just an "account". (Exhibit A). Michigan Court Rule 2.113(C)(1) requires that, "[i]f a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit. . . ." MCR 2.113(C)(1). The Michigan Supreme Court in *Fisher Sand & Gravel Co. v. Neal A. Sweebie, Inc.*, 494 Mich. 543 (Mich. 2013), held that, "the creditor's remedy is to timely pursue a breach of contract action when the debtor fails to live up to the terms of the underlying agreement. But when the credit relationship is not defined as an integral part of the transaction for goods or services, and instead arises from a course of dealing between the parties, an open account claim may arise by implied contract." *Id.* at 568.

In Michigan, "[t]he creation of an account stated requires the assent of both parties to the account. If an account stated exists, and unanswered affidavit . . . creates a prima facie case that the party failing to respond owes the other party the amount stated." *Cit Tech. Fin. Servs. v. Detroit Bd. Of Educ. & Detroit School District*, 2010 Mich. App. LEXIS 1446 * 7 (Mich. App. July 27,

2010) (unpublished) (*quoting Echelon Homes, LLC,* 261 Mich App at 435; *citing* MCL 600.2145[2]). Midland Funding by suing on an account stated, supported by an affidavit, and not on a contract, is a trap to an unsophisticated consumer under Michigan law, who may wrongfully assume that they can simply dispute the claim in an answer, as one could do in response to a breach of contract action. *See e.g.* (Exhibit F, *Sun Homes Inc, v. Hudson,* State of Michigan, 67-2 Judicial District, Plaintiff's Brief in Support of Motion for Summary Disposition, pp. 5-6) ("In this instant case, Plaintiff filed and served an affidavit of account upon the Defendant. Defendant has failed to file a counter-affidavit. Plaintiff has thus created a prima facie case of indebtedness pursuant to MCL 600.2145"). Midland Funding, by selecting to proceed on only an account stated claim, purposely chose to ease its evidentiary burden in proceeding before the state court and to bypass Michigan Court Rule 2.113(C)(1)'s attachment of the contract requirement. MCR 2.113(C)(1).

---

[2] MCL 600.2145 provides, "In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same. If the defendant in any action gives notice, with his answer of a counterclaim founded upon an open account, or upon an account stated, and annexes to such answer and notice a copy of such account, and an affidavit made by himself or by someone in his behalf, showing the amount or balance claimed by the defendant upon such account, and that such amount or balance is justly owing and due to the defendant, or that he is justly entitled to have such account, or said balance thereof, set off against the claim made by said plaintiff, and serves a copy of such account and affidavit, with a copy of such answer and notice, upon the plaintiff or his attorney, such affidavit shall be deemed prima facie evidence of such counterclaim, and of the plaintiff's liability thereon, unless the plaintiff, or someone in his behalf, within 10 days after such service in causes in the circuit court, and before trial in other cases, makes an affidavit denying such account or some part thereof, and the plaintiff's indebtedness or liability thereon and serves a copy thereof upon the defendant or his attorney, and in case of a denial of part of such counterclaim, the defendant's affidavit shall be deemed to be prima facie evidence of such part of the counterclaim as is not denied by the plaintiff's affidavit. Any affidavit in this section mentioned shall be deemed sufficient if the same is made within 10 days next preceding the issuing of the writ or filing of the complaint or answer."

11

In proceeding before the state court, Midland Funding by circumventing the attachment of contract requirement of MRC 2.113(C)(1), and instead suing on an account stated theory, disavowed the existence of the very contract they now seek to use in support of their motion to compel arbitration. Judicial estoppel is an equitable doctrine which "prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding." *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). Its "uniformly recognized" purpose is "to protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814 (2001). Judicial estoppel may apply when (1) a party's later position is clearly inconsistent with her earlier position; (2) the party to be estopped convinced the first court to adopt its position; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage on an opposing party if not estopped. *Maine*, 532 U.S. at 750-751 (*internal citations omitted*).

In Michigan, under MCL 600.2145, a plaintiff receives the benefit of reducing their evidentiary burden if they submit an affidavit, and are entitled to summary disposition if no counter affidavit is filed by the defendant. MCL 600.2145. The state court in entering the consent judgment adopted Midland Funding's position of an account stated and did not *sue sponte* dismiss the case as being frivolous. Plaintiff would more than likely have been able to defend against a breach of contact case given the multiple sales of the debt, the apparent lack of a contact available to Midland to sue upon, *see* (Exhibit A), or that Midland would not even be able to find the correct contract. *see* (Exhibit G) (letter from Midland's counsel demanding arbitration with a different contract than the contract submitted to the Court under oath); (Exhibit H) (Midland's Disclosures not identifying by name anyone at Midland, and not identifying anyone at Credit One Bank with knowledge to support its defenses, which would include arbitration, or anyone who made any statements in support, yet have submitted affidavits, statements in this case to support arbitration).

To allow Defendants to change course permitting them to assert the Credit One contract Midland Funding disavowed in order to proceed in state court with a lessor evidentiary burden, would be patently unfair.

## IV. If Arbitration is Compelled, the Court Should Stay, not Dismiss the Action

The Supreme Court on multiple occasions has stated that 9 U.S.C. § 3 mandates a stay once arbitration is compelled. In *Prima Point Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S. Ct. 1801 (1967), the Court held that motions to compel arbitration under FAA § 2, which Defendants here moved under, "requires a federal court in which suit has been brought 'upon any issue referable to arbitration under an agreement in writing for such arbitration' *to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement*." *Prima Point Corp.*, 388 U.S. at 400 (*citing* 9 U.S.C. § 3) (emphasis added).

After *Prima Point Corp.*, Supreme Court's mandate for a district court to stay a proceeding under FAA § 3, when compelling arbitration under FAA § 4, is consistent over the decades. *Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987) (emphasis added) ("The Act also provides that a court *must stay its proceedings* if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal district court to issue an order compelling arbitration if there has been a 'failure, neglect, or refusal' to comply with the arbitration agreement, § 4."); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2011) ("[F]ederal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4.") *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2011). *See also id.* at 77 (Stevens, J.) (*dissenting*) ("The FAA, therefore, envisions a limited role for courts asked to stay litigation and refer disputes to arbitration.")

If a court were to dismiss an action, the statute of limitations would start to run again, and a savvy defendant could simply run out the clock by not filing for the arbitration or pay their

13

required arbitration fees if the claimant initiated the arbitration, thereby resulting in a dismissal of the action by the arbitrator. Dismissing and not staying the action, creates a jurisdictional issue to a plaintiff's determent. "Section 10 of the Federal Arbitration Act (FAA), 9 U.S.C. § 10, allow[s] federal district courts to vacate arbitration awards, [it] does not confer upon federal district courts subject matter jurisdiction." *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002) (*citing United States v. Am. Soc. of Composers, Authors & Publishers*, 32 F.3d 727, 731 (2d Cir. 1994); *Harry Hoffman Printing v. Graphic Communications, Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983) ("'The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction.'"). "There must be an independent basis of jurisdiction before a district court may entertain petitions under the Act." *Id.* (*citing Harry Hoffman Printing*, 912 F.2d at 611). Therefore, if a case is dismissed without prejudice so the parties can initiate arbitration, the court would not maintain jurisdiction over the merits to the advantage of a dilatory defendant who could successfully run out the statute of limitations.

## CONCLUSION

WHEREFORE the reasons stated above, Plaintiff requests this Honorable Court to deny Defendants' Motion to Compel Arbitration, but if granted, Plaintiff demands a stay under the FAA.

Respectfully submitted,
s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner (P59915)
WARNER LAW FIRM, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com

14