| | | |
|---|---|---|
| ASHLEY NETTLES, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | No. 18-cv-7766 |
| v. | ) ) ) | Judge Edmond E. Chang |
| BLATT, HASENMILLER, LEIBSKER & MOORE LLC, MIDLAND FUNDING LLC, and MIDLAND CREDIT MANAGEMENT, INC., | ) ) ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION AND ORDER

Ashley Nettles brings this proposed class action against Defendants Midland

Funding LLC and Midland Credit Management, Inc.,[1] alleging that they violated the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*[2] Midland Funding and

Midland Credit now move to compel arbitration, arguing that Nettles' claim is subject

to a "valid and enforceable arbitration agreement [that] exists between Plaintiff and

Defendants." R. 19,[3] Defs.' Mot. to Compel at 9. For the reasons explained below, the

Defendants' motion to compel arbitration is denied without prejudice.

### I. Background

The only facts set out here are those needed to decide the pending motion. The

Defendants owned, by assignment, a credit card account that Nettles had opened with

---

[1]Nettles voluntarily dismissed another defendant (the law firm of Blatt, Hasenmiller, Leibsker & Moore LLC) earlier in the case. R. 35.

[2]The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[3]Citations to the record are noted as "R." followed by the docket number.

Credit One Bank in October 2015. *See* Defs.' Mot. to Compel at 2-4. This account was subject to a Cardholder Agreement, Disclosure Statement, and Arbitration Agreement (Credit Card Agreement). *Id.* at 2. Nettles made her last payment on the account in January 2016. *Id.* at 3. When the credit card account was charged off around six months later, in July 2016, the balance was $601.97. *Id.* In the weeks that followed, the account—and all underlying rights, title, and interest—was sold and assigned to multiple entities. *Id.* Ultimately, in August 2016, Midland Funding obtained ownership of the account. *Id.*

The arbitration provision of the Credit Card Agreement, which was assigned to the Defendants, covers (among other things) "communications" and "collections matters" relating to the account:

> Claims subject to arbitration include, but are not limited to … any disclosures or other documents or *communications* relating to your Account; … billing, billing errors, credit reporting, the posting of transactions, payment or credits, or *collections matters* relating to your Account … and any other  matters relating to your Account … .

Defs.' Mot. to Compel, Wiese Decl., Exh. C, Changes in Terms at 6 (emphases added). The arbitration provision also states that it survives any transfer or assignment of the account, *id.* at 9, and that "disputes about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof are not subject to arbitration and are for a court to decide[,]" *id.* at 7.

In March 2017, Midland Funding filed a lawsuit against Nettles in Michigan state court, demanding payment of the $601.97 due on the account. R. 25, Pl.'s Resp. Br. at 2; *id.* at Exh. A. A few months later, in June 2017, counsel for Nettles and

Midland Funding engaged in settlement negotiations. Pl.'s Resp. Br. at 4. The case was ultimately resolved in a Consent Judgment, entered by the Michigan judge in July 2017, which set up a monthly payment plan: "Defendant [Nettles] shall pay $50.00 per month beginning in 08/01/2017 until paid in full. Should Defendant fail to comply with this agreement in any manner, Plaintiff may file an Affidavit of Non-Compliance and commence all legal collection activity on the remaining balance." *Id.* at Exh. C. The total amount of the Consent Judgment was $689.37, which included $87.40 in costs. *Id.* It is worth noting that the Consent Judgment explicitly disclaimed statutory interest, *id.*, and counsel for Midland Funding agreed during negotiations that there would be no interest charged post-judgment, *id.* at Exh. B (June 28, 2017 emails).

Under the Consent Judgment, Midland Funding's law firm withdrew $50 from Nettles' bank account each month from August to October 2017. Pl.'s Resp. Br. at 4. After this, Nettles alleges, the law firm stopped accepting her payments. *Id.* It turned out that the law firm later permanently closed in mid-December 2017. *Id.* at Exh. D. In any event, Nettles alleges that, as of October 3, 2017, she only owed $593.37 on the Consent Judgment. *Id.* at 5. Despite this, Nettles received a letter in June 2018 claiming that her current balance was $643.59 (and notifying her that Midland Credit was the new servicer on the account). *Id.* at Exh. E. The letter provided a "Legal Collections Account Number" (No. 17-321241) and identified the original creditor (Credit One Bank) and the original account number (ending in -0849). *Id.* But the letter did not refer to the Consent Judgment. *Id.*

Nettles alleges that the Defendants violated the Fair Debt Collection Practices Act (FDCPA) when they failed to properly credit the payments she had made, and when they tried to collect a larger amount of money than she actually owed. R. 1, Compl. ¶¶ 44-53.

## II. Legal Standard

The Federal Arbitration Act requires federal courts to enforce valid arbitration agreements. 9 U.S.C. § 2. "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). That is, the Act enforces parties' agreements to arbitrate and "put[s] arbitration on a par with other contracts and eliminate[s] any vestige of old rules disfavoring arbitration." *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003).

If the parties have a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, then the arbitration requirement must be enforced. 9 U.S.C. §§ 3-4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). Whether the parties entered into a binding arbitration agreement is determined under principles of state contract law. *Janiga*, 615 F.3d at 742 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 934 (1995)). The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. 9 U.S.C. § 4; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018) ("[A]s the party seeking to compel arbitration, Credit One had the burden of showing that

A.D. was bound by the cardholder agreement as an authorized user"). At the same time, the Act also "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Indeed, the party that is resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The opponent's evidentiary burden is akin to that of a party opposing summary judgment under Federal Rule of Civil Procedure 56. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* Just like at the summary judgment stage, the Court must view the evidence in the light most favorable to the non-movant (that is, the party opposing arbitration) and draw reasonable inferences in the non-movant's favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Tinder*, 305 F.3d at 735.

### III. Analysis

The Defendants argue that Nettles' FDCPA claim is subject to the arbitration provision in the Credit Card Agreement, which also allegedly bars Nettles from bringing a class action (that is, it limits account holders to individual-only claims). Defs.' Mot. to Compel at 1. To compel arbitration, the Defendants must show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration provision, and (3) refusal by Nettles to proceed to arbitration. *See Zurich Am. Ins. Co. v. Watts*

*Indus.*, 466 F.3d 577, 580 (7th Cir. 2006). In this case, the second element is at issue. Nettles asserts that the Consent Judgment—which does not contain an arbitration provision—is the only contract that governs this dispute, in part because it is the document that "Defendants' collection activity was based upon." Pl.'s Resp. Br. at 1, 7, 10. According to Nettles, because the arbitration provision is limited to claims related to the credit card *account*, and because her claim is based instead on the Defendants' attempts to collect money owed on the *Consent Judgment*, her lawsuit is not arbitrable. *Id.* at 7-10.

There is a genuine issue of material fact on exactly what it was—the credit card account, the Consent Judgment, or some combination—that the Defendants were trying to collect on via the June 2018 letter. First, the letter informs Nettles that "Your MCM [Midland Credit] *Legal Collections* account number(s) are listed below," and asks Nettles to refer to that number in any calls with Midland Credit." Pl.'s Resp. Br., Exh. E (emphasis added). The letter then lists the "Legal Collections Account Number." *Id.* The letter also specifies the identity of the "Original Creditor" (Credit One Bank) and the "Original Creditor Account Number." *Id.* When viewed in Nettles' favor, Midland Credit's use of the term "Legal Collections" gives rise to an inference that the Defendants were trying to collect on the Consent Judgment, which was the product of the prior legal action filed by Midland Funding. Also, in this now federal-court case, the Defendants have offered no evidence, so far, on how or why the June 2018 letter was generated, and its connection (or lack of it) to the Consent Judgment. It is not even clear where the $643.59 came from. On the current record,

the Defendants have failed to provide enough evidence to indisputably show that the collection effort was for some amount arising from the credit card account, without any connection to the Consent Judgment. *See Johnson v. Uber Techs., Inc.*, 2017 WL 1155384, at \*2 (N.D. Ill. Mar. 13, 2017) (denying the motion to compel arbitration for lack of evidence, and explaining that "Uber, as the movant, was required to present to the Court facts such that a reasonable jury could return a verdict in its favor[,]" especially because, absent any discovery, "the information that is lacking is completely within Uber's control"). Taking all reasonable inferences in Nettles' favor, for now the Court must assume that the Defendants' demand for $643.59 in the June 2018 letter was based on the Consent Judgment.[4]

With this factual premise in mind, the Court now turns to whether the Consent Judgment falls within the scope of the arbitration provision. "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). In this case, the parties appear to rely on Michigan law, and this Opinion will do the same.[5] Under Michigan law, the "primary task is to

_____

[4]Although Nettles' contention that the June 2018 letter was an attempt to collect on the Consent Judgment works in her favor for avoiding *arbitration*, it is not clear how that characterization might undermine the FDCPA claim on the *merits*. That is, does the FDCPA apply at all to an attempt to collect on the Consent Judgment? This is worth the parties' attention if the case moves forward to the merits stage, and indeed is something worth considering when it comes to assessing the settlement value of the case.

[5]The Defendants assert in their motion to compel arbitration that Nevada law applies to the Credit Card Agreement. Defs.' Mot. to Compel at 10; *see id.* at Wiese Decl., Exh. C at 5. But the defense goes on to cite federal case law more generally, rather than Nevada-specific law. Defs.' Mot. to Compel at 12-13. Meanwhile, Nettles argues that the Consent Judgment is subject to Michigan law and cites a federal case that applies Michigan law. Pl.'s Resp. Br. at 8-9. In the defense's reply brief, when arguing in favor of a broad interpretation of the arbitration provision, the Defendants cite at least one federal case applying Michigan law. R.

ascertain the intent of the parties at the time they entered into the agreement, … by examining the language of the agreement according to its plain and ordinary meaning." *Altobelli v. Hartmann*, 884 N.W.2d 537, 542 (Mich. 2016). When considering the scope of an arbitration provision, courts have emphasized that "a party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration." *Id.* at 542-43 (cleaned up).[6]

The Defendants argue that, even if Nettles' FDCPA claim "is based entirely on the consent judgment arising out of the Michigan action, it would still be subject to arbitration[,]" because Nettles "agreed that any issues arising out of collections matters, such as a consent judgment, would also be arbitrable." R. 28, Defs.' Reply at 2.[7] The Defendants also argue that the June 2018 letter was an attempt to collect on the account, so the letter is a "communication[] relating to [Nettles'] Account … [,]" which places it within the scope of the arbitration provision. *Id.* at 5.

The first problem with the defense's argument is that it assumes a factual premise that has not yet been proven, that is, that the letter was an attempt to collect on the account rather than the Consent Judgment. If, after discovery, the record

---

28, Defs.' Reply at 6 (citing *Garcia v. Weltman, Weinberg & Reis Co.*, 2014 WL 1746522 (E. D. Mich. Apr. 30, 2014)). In any event, neither side argues that there is any substantive difference in choice of law. So this Court will apply Michigan principles of contract interpretation.

[6]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[7]The Defendants also rely on *Garcia*, 2014 WL 1746522 to show that "[o]ther courts have applied credit card agreements to post-judgment activity." Defs.' Reply at 6. Unlike Nettles, however, the plaintiff in *Garcia* did not argue that the underlying judgment controlled her FDCPA claim and fell outside the scope of the arbitration provision. As such, the case is distinguishable from the present dispute.

evidence shows that the defense was collecting only on the account without any reference to the Consent Judgment, then the Defendants will be entitled to invoke the arbitration provision. But that fact is not yet established.

If, on the other hand, the record evidence later shows that the June 2018 letter was an attempt to collect on the Consent Judgment, then the FDCPA claim is outside the scope of the arbitration provision. Collection on the Consent Judgment would *not* qualify as communications or collections matters "*relating to*" the original credit card account. Defs.' Mot. to Compel, Wiese Decl., Exh. C, Changes in Terms at 6 (emphasis added). Instead, the Defendants would be attempting to collect on the Consent Judgment, which is not the same as the credit card account and is instead a separate contract. *Cf. United States v. City of Northlake, Ill.*, 942 F.2d 1164, 1167 (7th Cir. 1991) ("A judicially approved consent decree, like a settlement agreement, is essentially a contract for purposes of construction."). Against this, the Defendants rely on the notion that collecting on the Consent Judgment constitutes a "collections matter" subject to arbitration. But that stretches the term "collections matter" too far. "Collections matter" cannot possibly include the collections *lawsuit* itself (that is, the Michigan state court case)—if it did, then Midland Funding's own lawsuit in state court would have been subject to arbitration. The same reasoning applies to the judgment that is the product of the lawsuit. Indeed, the consequences of the Defendants' argument is that not even the Michigan state court could enforce the very judgment that it entered. Consider this example: if Nettles had started paying $25 a month instead of $50 as required by the Consent Judgment, and if Defendants

then asked the state court judge to enforce the Consent Judgment and compel Nettles' compliance (for example, through citations on assets or garnishment), then *Nettles* could force the Defendants to arbitrate that dispute. There is no reason to think that an arbitration provision dealing with collections matters relating to the original account, or communications "relating to" the account, is so expansive that it deprives a court from deciding disputes over a court-ordered judgment that resolved a collection lawsuit. So if the evidence reveals that the June 2018 letter was an attempt to collect on the Consent Judgment, then the arbitration provision will not apply.

## IV. Conclusion

The Defendants' motion to compel arbitration is denied, though without prejudice. The status hearing of December 5, 2019 is accelerated to October 24, 2019 at 10:45 a.m. The parties shall confer on a discovery plan addressing whether the June 2018 letter was an attempt to collect on the Consent Judgment. The results of that conferral shall be reported in a joint status report, due on October 21, 2019.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2019